UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Civil Action No. 5:25-cv-156-BO-BM

| | | |
|---|---|---|
| RAYLEE JOSEPHINE GRIECO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NORTH CAROLINA STATE | ) | |
| HIGHWAY PATROL; NORTH | ) | |
| CAROLINA DEPARTMENT OF | ) | |
| PUBLIC SAFETY; ASHLEY R. | ) | |
| DAUGHTRY, Individually and in his | ) | |
| official capacity as Trooper with the | ) | |
| Highway Patrol; DEVIN M. RICH, | ) | **PLAINTIFF'S MEMORANDUM OF** |
| Individually and in his official capacity | ) | **LAW IN OPPOSITION TO** |
| as Trooper with the Highway Patrol; | ) | **DEFENDANTS' MOTION TO** |
| JAMES D. DUFF, Individually and in | ) | **DISMISS** |
| his official capacity as Trooper with the | ) | |
| Highway Patrol; TIMOTHY T. | ) | |
| DANIELS, Individually and in his | ) | |
| official capacity as Captain of Troop B | ) | |
| of the Highway Patrol; DAVID SMITH, | ) | |
| Individually and in his official capacity | ) | |
| as Lieutenant of Troop B of the Highway | ) | |
| Patrol; and FREDDY L. JOHNSON, | ) | |
| JR., Individually and in his official | ) | |
| capacity as Commander of the Highway | ) | |
| Patrol; | ) | |

Defendants.

## NATURE OF MATTER BEFORE COURT

Plaintiff Raylee Grieco, a freshman in college, was involved in a fatal car accident on February 18, 2024. Raylee was not impaired at the time of the accident. Despite that she sustained significant injuries in the accident and that strong pain medication had been administered to her at the hospital, troopers with NCSHP, in violation of Raylee's rights, conducted faulty impairment

testing on Raylee at the hospital, charged Raylee at the hospital for driving while impaired, and falsely reported to the press that Raylee was high at the time of the accident. Defendants' conduct resulted in Raylee's suspension from college, removal from the track and field team, and severe and continuing emotional distress.

In this case, Raylee asserts numerous state and federal claims against Defendants for their wrongful conduct. In lieu of filing an answer, Defendants filed a motion to dismiss some, but not all, of Raylee's claims. At this time, Raylee responds to Defendants' motion and, for the reasons below, requests that Defendants' motion be denied. The Complaint sufficiently states all of the claims for relief asserted in the Complaint.

## STATEMENT OF THE CASE

On February 17, 2025, Raylee Josephine Grieco ("Raylee" or "Plaintiff") filed this action in the Superior Court Division of Wake County, North Carolina, against North Carolina State Highway Patrol ("NCSHP"), North Carolina Department of Public Safety ("NCDPS"), and the following six troopers and/or officials employed with NCSHP and NCDPS: Ashley Daughtry ("Defendant Daughtry"), Devin M. Rich ("Defendant Rich"), James D. Duff ("Defendant Duff"), Timothy T. Daniels ("Defendant Daniels), David Smith ("Defendant Smith"), and Freddy L. Johnson, Jr. ("Defendant Johnson"). Defendants Daughtry, Rich, Duff, Daniels, Smith, and Johnson (at times referred to as the "Individually Named Defendants") are sued in their individual and official capacity. (See e.g. D.E. 1 ¶¶ 6-10).

In the Complaint, Plaintiff asserts the following claims against Defendants:

1. A libel *per se* claim against all Defendants;

2. A libel *per quod* claim against all Defendants;

2

3. A slander *per se* claim against NCSHP, NCDPS, Defendant Rich, and the "Supervisory Defendants" who are identified in Paragraph 14 of the Complaint as Defendants Daniels, Smith and Johnson;

4. A slander *per quod* claim against NCSHP, NCDPS, Defendant Rich, and the "Supervisory Defendants" who are identified in Paragraph 14 of the Complaint as Defendants Daniels, Smith and Johnson;

5. A malicious prosecution claim against Defendants NCSHP, NCDPS, Duff, Rich, Daniels, Smith and Johnson;

6. A claim pursuant to 42 U.S.C. § 1983 against the Individually Named Defendants in their individual capacity for the violation of Plaintiff's constitutional rights arising out of malicious prosecution;

7. A claim pursuant to 42 U.S.C. § 1983 against the Individually Named Defendants in their individual capacity for the violation of Plaintiff's constitutional rights as a result of injury to reputation and resulting loss of liberty interests (stigma plus claim);

8. A claim pursuant to 42 U.S.C. § 1983 against the "Supervisory Defendants" who are identified in Paragraph 14 of the Complaint as Defendants Daniels, Smith and Johnson based on supervisory liability;

9. A claim against NCSHP and NCDPS for the violation of North Carolina's State Constitution;

10. A claim against all Individually Named Defendants for negligence;

11. A claim against all Individually Named Defendants for gross negligence and malicious conduct;

12. A claim against all Defendants for intentional and negligent infliction of emotional distress; and

13. A punitive damages claim against all Defendants.

(D.E. 1).

On March 14, 2025, Defendants removed this case to federal court. (D.E. 1). On May 19, 2025, Defendants filed the instant Motion to Dismiss and Supporting Memorandum of Law which

seek the dismissal of some, but not all, of Plaintiff's claims.[1]  (D.E. 13, 14).  At this time, Plaintiff responds to the claims and arguments in Defendants' Memorandum.  For the reasons stated below, Plaintiff respectfully requests that Defendants' motion be denied.

## STATEMENT OF FACTS

On February 18, 2024, Raylee, a freshman at the University of North Carolina at Wilmington ("UNC-W"), was involved in an automobile accident while driving back to school after visiting her parents.  (D.E. 1 ¶¶ 24-32).  At approximately 8:15 p.m. on February 18, 2024, as she approached the intersection of I-40 and N.C. Highway 41 near Wallace, North Carolina, Raylee encountered a truck and a trailer positioned in the middle of the road directly in front of her, and a car parked behind the trailer also in the middle of the road.   Raylee swerved to the left but was unable to avoid a collision.  Unfortunately, an individual who was under the trailer trying to reconnect the trailer to the truck died in the accident.  (D.E. 1 ¶¶ 24-32).

Raylee also sustained injuries in the accident.  She was bleeding from her nose and was experiencing facial pain, chest, pain, left leg pain, and shoulder pain.  She had numerous bruises and abrasions.  (D.E. 1 ¶¶ 32).  Due to her injuries, Raylee was transported by EMS to ECU Health Duplin County Hospital.  (D.E. 1 ¶ 35).  Before she left the scene, Defendant Duff (a NCSHP trooper with Troop B) responded to the scene and, as part of his investigation, performed a roadside

---

[1] In their Memorandum, Defendants do not address Plaintiff's individual capacity state or federal claims against Defendants Daughtry, Rich, and Duff.  Defendants similarly do not address the individual capacity state tort claims (except Plaintiff's claim for intentional infliction of emotional distress) against Defendants Johnson, Daniels, and Smith.  Defendants' failure to address these claims in their Memorandum constitutes a waiver of all arguments regarding these claims and precludes Defendants from pursuing a dismissal of these claims via this motion.  See Brown v. Nucor, Corp., 785 F.3d 895, 932 (4th Cir. 2015), and Carr v. Commissioner of Social Security, 2022 WL 987336 *2 (unpublished) (WDNC March 31, 2022).  As of this date, answers have not been filed on behalf of these Defendants as to the claims which are not addressed in Defendants' Memorandum.

4

portable breath test on Raylee—which was negative. (D.E. 1 ¶ 34). Raylee was not impaired by any impairing or intoxicating substance at the time of the accident and no evidence suggested or existed that she was. (D.E. 1 ¶ 36).

At the hospital, Raylee's healthcare provider (a nurse practitioner) observed that Raylee had been involved in a collision, that she had hit the dashboard during the collision, that both airbags deployed, and that she had, among other injuries, nasal bone swelling and tenderness. (D.E. 1 ¶ 37). After diagnostic testing was complete, Raylee was diagnosed with mildly comminuted displaced bilateral nasal bone fractures, contusion of the left shoulder, acute ear pain, and various contusions and abrasions. (D.E. 1 ¶ 38). While her initial CT scan was not able to confirm she had a concussion, she was told at the hospital that she likely had a concussion, and it was subsequently determined that she was in fact suffering from a concussion at the time. (D.E. 1 ¶ 39).

The nurse practitioner who examined and provided care to Raylee was of the opinion that Raylee was not under the influence of any impairing substance. She did not therefore perform a blood test for potential impairing substances prior to administering a strong pain medication (NORCO) to Raylee for pain. (D.E. 1 ¶¶ 39-40). After receiving the NORCO, Raylee began feeling its effects. While the nurse practitioner observed that Raylee was initially alert and normal appearing under the circumstances, Raylee became "very loose" and "a little out of it" after NORCO was administered. (D.E. 1 ¶ 41).

As part of his continuing investigation of the accident, Defendant Duff went to the hospital with the intention of charging Raylee with failure to reduce speed, and nothing else. (D.E. 1 ¶ 42). When, however, a nurse or nursing assistant (who was not involved in Raylee's care) allegedly informed Defendant Duff that Raylee was "acting strangely," observations made by this individual

*after* NORCO was administered to Raylee, Defendant Duff requested the assistance of Defendant Rich, a purported NCSHP Drug Recognition Expert, to come to the hospital. (D.E. 1 ¶¶ 43-47). Defendant Duff did not, prior to requesting assistance from Defendant Rich, speak with any of the providers responsible for Raylee's care. (D.E. 1 ¶¶ 44-45).

Despite that Raylee sustained significant injuries in the accident, was understandably upset regarding the accident, was experiencing the effects of NORCO, and no evidence existed that she was impaired, Defendant Rich requested to perform impairment testing at the hospital on Raylee. (D.E. 1 ¶ 48). Defendant Rich was aware that NORCO had been administered to Raylee and improperly and wrongfully informed Raylee's parents that NORCO would not impact his DRE testing, including the HGN eye test. (D.E. 1 ¶ 49). He also improperly and wrongfully informed Raylee's parents that she was not suffering from a concussion and that her injuries would not impact his testing. (D.E. 1 ¶¶ 50-51). (Again, Raylee was diagnosed with and treated for a concussion the following day by her primary care physician. (D.E.1 ¶ 64)).

Despite these circumstances, Defendant Rich proceeded with conducting subjective DRE testing at the hospital which included such things as asking Raylee to walk in a straight line, stand straight while closing her eyes, and touch her nose. He also made observations of Raylee's eye movements at the hospital. (D.E. 1 ¶¶ 52-53).

As a result of this testing, Defendant Rich improperly, wrongfully, and recklessly concluded that Raylee was impaired at the time of the accident. (D.E. 1 ¶ 54). Defendant Rich did not speak with the healthcare providers responsible for Raylee's care prior to making this improper and incorrect determination. (D.E. 1 ¶¶ 55-57).

Significantly, the only "objective" test that Defendant Rich performed that night was obtaining a blood sample from Raylee used to detect impairing substances. (D.E. 1 ¶ 55).

Defendant Rich did not, however, wait for the results prior to wrongfully and recklessly concluding that Raylee was impaired at the time of the accident. (D.E. 1 ¶ 55). Instead, he wrongfully and recklessly communicated to hospital staff and Defendant Duff that Raylee was impaired. (D.E. 1 ¶¶ 58-59). Despite his knowledge of the circumstances of Defendant Rich's "testing" and Defendant Duff's prior intention, based on his own investigation, to charge Raylee only with failure to reduce speed, Defendant Duff wrongfully and recklessly charged Raylee with driving while impaired and underage driving while impaired. (D.E. 1 ¶¶ 59-61).

Subsequent to Raylee's wrongful charge and in response to requests from the press for information regarding the accident, Defendants Duff and Rich wrongfully, recklessly, and falsely reported to Defendant Daughtry, tasked by NCSHP with responding to the press, that Raylee was high on marijuana at the time of the accident. (D.E. 1 ¶¶ 65-68). Defendant Daughtry then wrongfully, recklessly, and falsely sent a press release to various news outlets stating, among other reckless and damaging statements, that DRE testing was performed on Raylee "which confirmed the presences of THC." (D.E. 1 ¶¶ 70-80). In the press release, Defendant Daughtry stated that he was going to consult with the District Attorney to evaluate *felony death charges* against Raylee for failure to reduce speed and DWI. (D.E. 1 ¶ 75). In the Complaint, Plaintiff asserts that Defendants Smith, Daniels, and Johnson reviewed and were aware of the press release prior to its publications. (D.E. 1 ¶ 77).

As detailed in the Complaint, Defendants' conduct resulted in irreparable damage to Raylee. (D.E. 1 ¶ 80). News outlets reported, and continued to report, that Raylee was impaired and high at the time of the collision. She was portrayed in an extremely negative light during this time. (D.E. 1 ¶¶ 81-98). She essentially became the "poster child" in the news for every story involving driving while high on THC. (D.E. 1 ¶¶ 99-100).

Raylee was summarily suspended from UNC-W due to these events, and was prevented by school policies from attending any public university in North Carolina for one year. (D.E. 1 ¶¶ 101-106). This suspension prevented Raylee, a student athlete, from engaging in team activities on UNC-W's varsity track and field team. (D.E. 1 ¶ 101). Raylee also became the target of threatening and hateful social media posts which are detailed in the Complaint. (D.E. 1 ¶¶ 107-125).

Five months later, in July 2024, the blood test results were returned to Duplin County's District Attorney. The test results revealed that "no impairing substances were identified" and all charges were dropped against Raylee. (D.E. 1 ¶ 80).

As a result of Defendants' conduct, Raylee suffered extreme and severe emotional distress, embarrassment, loss of liberty interests, injury to reputation and other losses. (D.E. 1 ¶¶ 127-130). She suffers from panic attacks and anxiety and has been diagnosed with post-traumatic stress disorder and depression for which she has sought and continues to seek treatment. (D.E. 1 ¶¶ 127-130). She was not able, emotionally, to return to UNC-W when allowed to do so and has not, to this day, returned to competitive track and field. (D.E. 1 ¶¶ 127-130).

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff need only plead enough facts to state a claim for relief that is plausible on its face, or that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The reviewing court must accept all factual allegations in the complaint as true. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). A complaint should not be dismissed for failure to state a claim on which relief can be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him or her to relief.  <u>Hartford Fire Ins. Co. v. California</u>, 509 U.S. 764, 811 (1993) (internal quotation and citations omitted).  In <u>Republican Party of North Carolina v. Martin</u>, 980 F.2d 943 (4th Cir. 1992), the Fourth Circuit cautions that a 12(b)(6) motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  <u>Id.</u> at 952.

Defendants' motion to dismiss is also based, in part, on Rule 12(b)(1).  While the burden is on the plaintiff to establish subject matter jurisdiction, "[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  <u>Richmond, Fredericksburg & Potomac R. Co. v. U.S.</u>, 945 F.3d 765, 768 (4th Cir. 1991).

## <u>ARGUMENT</u>

I.    **<u>Plaintiff's Complaint states valid claims against NCSHP and NCDPS; Defendants' motion to dismiss these claims should therefore be denied.</u>**

a)    **Plaintiff's intentional state tort claims against NCSHP and NCDPS:**

In Section 1(a) of their Memorandum, Defendants do not argue that Plaintiff's Complaint fails to include sufficient facts to state intentional tort claims against NCSHP or NCDPS.  Instead, Defendants' sole argument is that Claims 1-5 (libel *per se*, libel *per quod*, slander *per se*, slander *per quod* and malicious prosecution) and Claim 12 (negligent and intentional infliction of emotional distress) are barred by sovereign immunity.

While Plaintiff acknowledges that state agencies are immune from tort claims absent a waiver of immunity, a determination regarding sovereign immunity cannot be made at this early stage in this case.  Defendants' motion is, therefore, at best premature and should be denied.

The Complaint clearly asserts that Defendants do not have sovereign immunity, have consented to jurisdiction, and/or have waived immunity, including through the purchase of

9

insurance. (D.E. 1 ¶¶ 18-19). While Defendants present arguments in their Memorandum that NCSHP and NCDPS have statutorily consented to being sued only for negligence claims, Defendants do not address the issue of whether immunity has been waived by Defendants through the purchase of insurance. At a minimum, Plaintiff should have the right to explore whether insurance exists, whether it is applicable to the claims at issue herein, and whether any applicable insurance policies are sufficient to waive immunity as to these claims.[2]

Moreover, while Defendants state in their Memorandum that these claims must be brought, if at all, in North Carolina's Industrial Commission (D.E. 14 p. 4), Plaintiffs filed these claims in the Industrial Commission and *Defendants have moved therein to dismiss* all of Plaintiff's claims based upon lack of subject matter jurisdiction.[3] Plaintiff contends that she is entitled to pursue these claims in one forum or the other and that a determination of which forum is the correct forum cannot be made as a final matter of law in this case at this time based upon the Complaint alone.

Accordingly, for the reasons above, Plaintiff respectfully requests that Defendants' motion to dismiss Claims 1-5 and 12 against NCSHP and NCDPS based on sovereign immunity be denied at this time. In Richmond, Fredericksburg & Potomac R. Co., the Fourth Circuit cautions that

---

[2] Plaintiff is aware that North Carolina's courts, in fairly dated cases, have indicated that the purchase of insurance therein did not waive immunity, in those cases, the courts had access to and referenced the insurance policies involved. See e.g. Hooper v. North Carolina, 379 F. Supp. 2d 804, 813, 1:04 CV 00014 (MDNC 2005), and Wood v. North Carolina, 147 N.C. App. 336, 345, 554 S.E.2d 38, 44 (2001).

[3] Defendants' Industrial Commission Answer is attached hereto as Exhibit A. Courts are allowed to consider additional information when making a determination regarding subject matter jurisdiction without converting the motion into a summary judgment motion. Richmond, Fredericksburg & Potomac R. Co., 945 F.3d at 768 (4th Cir. 1991). Courts are also allowed to take judicial notice of court pleadings in other cases. People for the Ethical Treatment of Animals, Inc. v. U.S. Dept. of Agriculture, No. 515-CV-429-D, 194 F. Supp. 3d 404, 409 (EDNC 2016).

"[t]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." 945 F.3d at 768.

### b) Plaintiff's North Carolina state constitutional claim against NCSHP and NCDPS:

In their Memorandum, Defendants make one argument, and one argument only, in support of their motion to dismiss Plaintiff's state constitutional claim. Defendants do not argue that a colorable state constitutional claim does not exist; nor do they argue or attempt to show the Court what adequate state remedies in fact exist that would bar Plaintiff's state constitutional claim. Defendants argue instead (in two paragraphs on pp. 4-5 of their Memorandum) that Plaintiff's state constitutional claim should be dismissed on its face because Plaintiff did not *specifically assert* in the Complaint that adequate state remedies do not exist. (D.E. 14 pp. 4-5).

Defendants' argument misconstrues the law regarding the pleading requirements for this claim under the circumstances in this case. While North Carolina's courts have loosely stated at times that to assert a state constitutional claim, plaintiffs must assert the lack of an adequate state remedy, the Supreme Court of North Carolina did not impose a *pleading requirement* of this nature in Corum v. University of North Carolina, 330 N.C. 761, 413 S.E.2d 276 (1992), the pivotal case regarding the direct state constitutional claims in North Carolina. The court, instead, merely set forth the parameters of this claim, stating only:

> When called upon to exercise its inherent constitutional power to fashion a common law remedy for a violation of a particular constitutional right, however, the judiciary must recognize two critical limitations. First, it must bow to established claims and remedies where these provide an alternate to the extraordinary exercise of its inherent constitutional power. Second, in exercising that power, the judiciary must minimize the encroachment upon other branches of the government—in appearance and in fact—by seeking the least intrusive remedy available and necessary to right the wrong.

Id. at 784, 413 S.E.2d at 291.

The same is true regarding the North Carolina Supreme Court's decision in <u>Deminski v.</u> <u>State Board of Education</u>, 377 N.C. 406, 858 S.E.2d 688 (2021), the North Carolina Supreme Court case referenced in Defendants' Memorandum in this section of their Memorandum. In <u>Deminski</u>, as in <u>Corum</u>, the court discusses the parameters of a state constitutional claim and the court's role in determining whether a complaint sufficiently states a state constitutional claim:

> The issue here requires us to determine whether plaintiff's complaint sufficiently alleges a claim for relief under [the state constitution]. First, to allege a cause of action under the North Carolina Constitution, a state actor must have violated an individual constitutional rights. . . . Second, the claim must be colorable. . . . Third, there must be no adequate state remedies.

<u>Id.</u> at 413-14, 858 S.E.2d at 793-94 (internal quotations and citations omitted).

Similarly, in its recent decision of <u>K.H. v. Dixon</u>, 296 N.C. App. 62, 907 S.E.2d 766 (2024), North Carolina's Court of Appeals refers, not to pleading requirements, but to a *three-part test to be applied by the courts* when analyzing state constitutional claims. <u>Id.</u> at 68, 907 S.E.2d at 772. In <u>K.H.</u>, the court elaborates:

> To determine whether a plaintiff's complaint has sufficiently alleged a claim for which relief may be granted under our state constitution, we must apply a three-part test.
>
> First, to allege a cause of action under the North Carolina Constitution, a state actor must have violated an individual's constitutional rights. Second the claim must be colorable. To be colorable, the claim must present facts sufficient to support an alleged violation of a right protected by the State Constitution. And third, there must be no adequate state remedy. No adequate state remedy exists when state law does not provide for the type of remedy sought by the plaintiff.

<u>Id.</u> (internal quotations and citations omitted).

Accordingly, despite Defendants' arguments to the contrary, state constitutional claims are not subject to dismissal at the 12(b)(6) stage *based solely* on the lack of an allegation in the Complaint that adequate state remedies do not exist. Defendants have identified no cases where

12

claims were dismissed, or conversely allowed to proceed, based solely upon the inclusion or exclusion of an allegation regarding the existence or nonexistence of adequate state remedies. Instead, in each case, the courts utilize the test above, one part of which is the availability of adequate state remedies, to analyze state constitutional claims at the 12(b)(6) stage.

Requiring plaintiffs to specifically include this allegation in a complaint in order to survive a 12(b)(6) challenge in cases where more than one claim is included in the complaint directly conflicts with Fed. R. Civ. P. 12(d) which allows parties to assert alternate and even inconsistent claims. Perhaps more importantly, Defendants' argument directly conflicts with North Carolina law in cases where, *as here*, the defendants challenge the plaintiff's other state claims based on sovereign immunity.

The courts of North Carolina have repeatedly held that claims which are barred by sovereign or governmental immunity do not constitute adequate state remedies. In North Carolina, the dismissal of a state constitutional claim is not allowed where sovereign and governmental immunity bar, or potentially bar, the alleged adequate state remedies. <u>Craig v. New Hanover Board of Education</u>, 363 N.C. 334, 678 S.E.2d 351 (2009). "Our Supreme Court has indicated that "when there is a clash between constitutional rights and sovereign immunity, the constitutional rights must prevail." <u>K.H.,</u> 296 N.C. App. at 68, 907 S.E.2d at 772 (internal quotations and citations omitted).

In <u>Craig</u>, North Carolina's Supreme Court affirmed the denial of the defendants' motion for *summary judgment* as to the plaintiff's state constitutional claim after determining that a question existed as to whether the plaintiff's common law negligence claims were barred by sovereign and/or governmental immunity and therefore inadequate, noting:

> Here, plaintiff's remedy cannot be said to be adequate by any realistic measure. Indeed, to be considered adequate in redressing a constitutional

13

wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim. Under the facts averred by plaintiff here, the doctrine of sovereign immunity precludes such opportunity for his common law negligence claim because the defendant Board of Education's excess liability insurance policy excluded coverage for the negligent acts alleged. *Plaintiff's common law cause of action for negligence does not provide an adequate remedy at state law when governmental immunity stands as a complete bar to such a claim.*

Id. at 340, 648 S.E.2d at 355 (emphasis added). The court states that determining that a claim that is barred by governmental or sovereign immunity is adequate "would be contrary to our opinion in *Corum* and inconsistent with the spirit of our long-standing emphasis on ensuring redress for every constitutional injury." Id. at 342, 678 S.E.2d at 357.

In this case, as in Craig, Defendants have challenged Plaintiff's state tort defamation claims against NCSHP and NCDPS based on sovereign immunity. Defendants have also moved to dismiss all of Plaintiff's state claims against all of the named Defendants herein in North Carolina's Industrial Commission.[4] (See Exhibit A.) Defendants should not be allowed to assert unqualified sovereign immunity in response to Plaintiff's other claims and simultaneously argue to this Court that Plaintiff's state constitutional claim should be dismissed because Plaintiff did not specifically assert in the Complaint that adequate state remedies do not exist. This is prohibited by Craig.

Defendants' motion to dismiss Plaintiff's state constitutional claim based upon Plaintiff's failure to specifically include an allegation in the Complaint that adequate state remedies do not exist should be denied. Again, this is the only argument presented by Defendants in support of their motion to dismiss this claim. Defendants do not argue that Plaintiff's Complaint fails to include sufficient facts to show, for pleading purposes, that Plaintiff's state constitutional rights

---

[4] As of this date, Defendants have not yet filed answers. It is possible that where they file answers, Defendants may assert additional immunities and defenses which could be applicable to the issue of whether adequate state remedies exist.

were violated. Moreover, Defendants do not address or attempt to explain how, or in what manner, Plaintiff's other state claims are adequate. Defendants may not advance these additional arguments at this time. "A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issues." Brown v. Nucor, Corp., 785 F.3d 895, 932 (4th Cir. 2015) (internal quotations and citations omitted). See also Carr v. Commissioner of Social Security, 2022 WL 987336 *2 (unpublished) (WDNC March 31, 2022) (holding party waived arguments which were not fully developed in opening brief or notice of supplemental authority associated therewith.)

Even if Defendants had argued in their Memorandum, specifically, that adequate state remedies exist (which they did not do), such a determination cannot be made at this early stage of this lawsuit where Defendants have not yet filed answers and have, as discussed above, asserted sovereign immunity as a bar to Plaintiff's claims. At best, Defendants' motion is premature. In many cases, the determination of whether adequate state remedies exist is not made until the *summary judgment* stage after the benefit of discovery. See e.g. Davis v. Town of Southern Pines, 116 N.C. App. 663, 449 S.E.2d 240 (1994), and London v. Hamilton, 3:95-cv-547, 1996 WL 942865 (W.D.N.C. 1996) (unpublished), where summary judgment motions were involved, not motions to dismiss. In Googerdy v. N.C. Agric. & Tech. State. Univ., 386 F. Supp. 2d 618, 230, (M.D.N.C. 2005), the court held that it was actually *inappropriate* to address the issue of whether adequate state remedies existed (a breach of contract claim) at the 12(b)(6) stage because other issues needed to be resolved first:

> Considering the posture of this matter, dismissal of Plaintiff's direct constitutional claim is inappropriate. The court has deferred ruling on whether it has subject matter jurisdiction to hear Plaintiff's breach of contract claim. A determination of that issue may provide Plaintiff an adequate state remedy. . . . Therefore, Defendants' motion to dismiss will be denied as to that claim.

15

<u>Id.</u>

Accordingly, Plaintiff has sufficiently stated a state constitutional claim against NCSHP and NCDPS. Defendants' motion to dismiss this claim should therefore be denied.[5]

II. **Plaintiff's Complaint states valid claims against Defendants Daniels, Smith, and Johnson ("Supervisory Defendants"); Defendants' motion to dismiss these claims should therefore be denied.**

   a) **Plaintiff's official capacity Section 1983 claims against Defendants Johnson, Daniels and Smith:**

Plaintiff asserts the following federal constitutional claims against Defendants Johnson, Daniels, and Smith pursuant to 42 U.S.C. § 1983: a claim based upon malicious prosecution (Sixth Claim for Relief); a claim based on loss of reputation and resulting loss of liberty interests which is referred to at times as a stigma plus claim (Seventh Claim for Relief); and, a supervisory liability claim (Eighth Claim for Relief). Plaintiff's Sixth and Seventh Claims for Relief are brought against the Individually Named Defendants in their individual capacity only. (D.E. 1 ¶¶ 208, 215). Plaintiff's Eighth Claim for Relief is brought against the Individually Named Defendants in their official and individual capacity. (D.E. 1 ¶ 226).

In Section II(a) of their Memorandum, Defendants seek the dismissal of Plaintiff's Section 1983 *official capacity* claims against Defendants Johnson, Daniels, and Smith based on Eleventh Amendment immunity, and on the grounds that these Defendants, in their official capacities, do not constitute state actors pursuant to Section 1983. Based on the legal authority cited in Defendants' Memorandum that state officials, when sued in their official capacity, are not state

---

[5] In the event the Court determines that plaintiffs are specifically required to plead lack of adequate state remedies under the circumstances in this case where Defendants raise sovereign immunity as a defense to the plaintiff's other claims, Plaintiff requests leave to amend the Complaint to including this allegation.

actors for purposes of Section 1983, Plaintiff agrees to the dismissal of her Section 1983 official capacity claims against Defendants Johnson, Daniels, and Smith in her Eighth Claim for Relief on this ground. Defendants do not agree to the dismissal of any other official capacity claims against these Defendants, or any of Plaintiff's individual capacity claims against these Defendants.

> **b)** **Plaintiff's official capacity state intentional tort claims against Defendants Johnson, Daniels, and Smith:**

In Section II(b) of their Memorandum, Defendants request that Plaintiff's official capacity intentional state tort claims against Defendants Johnson, Daniels, and Smith be dismissed based upon sovereign immunity. For the reasons set forth above in Section I(a), Plaintiff requests that this motion be denied. As discussed above in Section I(a), Plaintiff has sufficiently asserted waiver of immunity by all Defendants, including through the purchase of insurance which Defendants do not address in their Memorandum. (D.E. 1 ¶¶ 18-19). Moreover, Defendants have taken contradictory positions (here and in North Carolina's Industrial Commission) regarding sovereign immunity and subject matter jurisdiction. As such, a determination regarding sovereign immunity cannot be made as a matter of law at this time. Defendants' motion should therefore be denied.

> **c)** **Plaintiff's individual capacity Section 1983 claims against Defendants Johnson, Daniels, and Smith:**

As stated above, Plaintiff asserts three Section 1983 claims against Defendants Johnson, Daniels, and Smith. (Sixth, Seventh, and Eighth Claims for Relief). It does not appear that Defendants' motion to dismiss includes Plaintiff's Eighth Claim for Relief which is based on supervisory liability. On p. 8 of their Memorandum, Defendants conclude Section II(c) of their Memorandum by stating as follows: "For those reasons, Plaintiff's individual capacity claims against the Supervisory Defendants under § 1983 (*i.e. claims six and seven*) should be dismissed for failure to state a claim under Rule 12(b)(6)." (D.E. 14 p. 8) (emphasis added). Defendants do

not specifically reference Plaintiff's Eighth Claim for Relief in this sentence, or elsewhere in this section of their Memorandum.

Regardless, Plaintiff's Complaint sufficiently asserts all three Section 1983 claims against Defendants Johnson, Daniels, and Smith based on their personal involvement in the acts complained of *and* based on supervisory liability. Defendants' arguments to the contrary are without merit and ignore the allegations in the Complaint.

### 1. Constitutional Malicious Prosecution Claim:

Regarding personal participation and involvement, Defendants correctly note in their Memorandum that personal involvement does not require "hands on" involvement. Riddick v. Barber, 109 F. 4th 639, 649 (4th Cir. 2024). Here, Plaintiff's allegations are sufficient for pleading purposes to satisfy the personal involvement requirement as to Defendants Johnson, Daniels, and Smith regarding Plaintiff's federal constitutional malicious prosecution claim.

This claim involves the investigation by Defendants Duff and Rich (of Troop B) of the fatal accident involving Plaintiff, their subsequent charging of Plaintiff. In the Complaint, Plaintiff details the constitutionally inappropriate way Defendants Duff and Rich investigated the accident and treated Plaintiff—including but not limited to requiring her to undergo impairment testing at the hospital on the night in question despite that she sustained injuries in the accident and was under the effects of a strong pain medication that had been administered to her after the accident. (D.E. 1 ¶¶ 33-64). They did so without talking to Plaintiff's treating providers and made critical misrepresentations to Plaintiff to wrongfully encourage her to participate in impairment testing at the hospital despite that she had sustained significant injuries in the accident and was under the effect of prescribed pain medication. (D.E. 1 ¶¶ 33-64). Defendants Rich and Duff also wrongfully and unconstitutionally detained and charged Plaintiff for driving while impaired under

circumstances knowing that probable cause did not exist for the charge. (D.E. 1 ¶¶ 33-64).

Defendants Smith and Daniels were the leaders of Troop B. (D.E. 1 ¶ 9). Defendant Johnson was the Commander of NCSHP. (D.E. ¶¶ 12, 14). The accident involved a fatality and was the subject of extensive press coverage. It is reasonable to infer, as stated in the Complaint, that Defendants Smith, Daniels, and Johnson were made aware of the events, participated in the decision to move forward with testing Plaintiff at the hospital despite the existing circumstances, and participated in the decision to charge Plaintiff without waiting for the objective blood test results which revealed that Plaintiff was not impaired at the time of the accident.

Plaintiff asserts as such. In Paragraph 228 of the Complaint, Plaintiff asserts that "the Supervisory Defendants had actual and constructive notice that their subordinates were engaging in conduct, described in the preceding paragraphs of the Complaint, which posed an unreasonable and pervasive risk of constitutional injury to individuals such as Raylee[.]" (D.E. 1 ¶ 228). Plaintiff asserts further that the Supervisory Defendants had actual and constructive knowledge that troopers "would fail to have probable cause" for Plaintiff's charges. (D.E. 1 ¶¶ 229). Plaintiff asserts that Defendants Smith, Daniels, and Johnson had decision-making authority and were a direct and proximate cause of the unconstitutional conduct of Defendants Rich and Duff. (D.E. 1 ¶¶ 231, 233). Plaintiff further states that Defendants Smith, Daniels, and Johnson condoned and encouraged the use of DRE testing despite knowledge that a strong pain medication had been administered to Plaintiff and that Plaintiff had been injured in the accident. (D.E. 1 ¶ 227 (a) and (b)). Plaintiff also asserts that these Defendants condoned and encouraged the use of faulty DRE and HGN testing, and condoned and encouraged the wrongful institution of charges against Plaintiff based on faulty and unreliable information. (D.E. 1 ¶ 227 (c),(d), and(e)).

These allegations are more than sufficient to satisfy the participation *and* causation

requirements for Plaintiff's federal constitutional claims against Defendants Johnson, Daniels, and Smith based upon unconstitutional malicious prosecution (Sixth Claim for Relief). Plaintiff's allegations are also sufficient to support this claim against Defendants Johnson, Daniels, and Smith based on supervisory liability (Eighth Claim for Relief).

In <u>Shaw v. Stroud</u>, 13 F.3d 791 (1994), the Fourth Circuit confirms that it "is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." <u>Id.</u> at 798. The Court states that supervisory liability can extend to the "highest levels of state government" and is "ultimately determined" by "pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." <u>Id.</u> at 798-799 (internal quotations and citations omitted). Significantly, the Court in <u>Shaw</u> cautions: "*We have also noted that this issue is ordinarily one of fact, not law.*" <u>Id.</u> at 799 (emphasis added).

To state a supervisory liability claim, the following elements must be shown:

> That the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Id.</u> at 799 (internal quotations and citations omitted). For supervisory claims, constructive knowledge is sufficient to state a claim. Actual knowledge is not required. <u>Id.</u> at 799.

Here, the wrongful and unconstitutional actions of Defendants Rich and Duff involved core NCSHP tasks regarding the investigation of accidents, the use of impairment testing, and the charging/arrest of suspects. It is logical to infer from the Complaint that Defendants Smith, Daniels, and Johnson would be involved as supervisors, trainers, and policy makers in these core

activities to make sure, at a minimum, that NCSHP officers were not committing constitutional violations.

And, Plaintiff asserts as such. In the Complaint, Plaintiff asserts that Defendants Johnson, Daniels, and Smith served in supervisory roles and were responsible for the training of NCSHP officers and the implementation and enforcement of policies and practices which violated Plaintiffs' rights. (D.E. 1 ¶¶ 14, 227). Defendants Smith and Daniels were the leaders of Troop B. (See e.g. D.E. 1 ¶ 9). Defendant Johnson was the Commander of NCSHP. (D.E. ¶¶ 12, 14). He was tasked by law to supervise, train, and implement policies for NCSHP officers. See e.g. §§ 143B-1702, 143B-1710. In Avery v. Burke County, 660 F.2d 111 (1981), the Fourth Circuit instructs that where the State empowered a board to operate and manage a governmental agency or entity which provides services to the public, "[t]here can be no doubt that North Carolina law require[s] [the boards] to supervise their employees and to promulgate guidelines and policies" to achieve their statutory mission. Id. at 114.

In addition to asserting, as discussed above, that Defendants Smith, Daniels, and Johnson condoned and encouraged the conduct of Defendants Rich and Duff (D.E. 1 ¶ 227), Plaintiff asserts that the Supervisory Defendants failed to adequately train and supervise its officers regarding investigations and arrests, including the use of HGN and DRE testing under the circumstances in this case. (D.E. 1 ¶ 227(g)). Plaintiff also asserts, specifically, that Defendants Smith, Daniels, and Johnson had decision-making authority and that their conduct was a direct and proximate cause of the unconstitutional conduct of Defendants Rich and Duff. (D.E. 1 ¶¶ 231, 233).

Based on these allegations, Plaintiff's Complaint satisfies the pleading requirements for her constitutional malicious prosecution claim based on both personal participation and supervisory liability. Defendants' motion to dismiss Plaintiff's Sixth and Eighth Claims for Relief

should therefore be denied.

## 2. Constitutional Loss of Reputation (Stigma Plus) Claim:

Plaintiff's Complaint also satisfies the pleading requirements for her constitutional loss of reputation stigma plus claim (Seventh and Eighth Claims for Relief). Regarding personal involvement, Plaintiff specifically states in the Complaint that the Supervisory Defendants participated in the publication of the false and defamatory statements. (D.E. 1 ¶ 74). Plaintiff asserts that the Supervisory Defendants assigned Defendant Daughtry the task of preparing a response to news outlets regarding the accident. (D.E. 1 ¶ 66). Plaintiff states further that the Supervisory Defendants "reviewed the press release, confirmed that NCSHP should release it, and ordered or directed that the press release be published, despite the false and defamatory statements contained therein. (D.E. 1 ¶ 74). Defendants ignore all of these allegations in their Memorandum.

Regarding supervisory liability, Plaintiff's Complaint details the manner in which Defendants Rich, Duff, and Daughtry violated Plaintiff's rights by making false and defamatory statements in press releases on behalf of NCSHP. (D.E. 1 ¶¶ 65-125). Plaintiff asserts that the Supervisory Defendants violated Plaintiff's constitutional rights regarding the publication of the above-referenced false and defamatory statements through their failure to perform their supervisory duties, including their duty to train and supervise NCSHP employees. (D.E. 1 ¶¶ 224-233). In Paragraph 227, Plaintiff specifically asserts that the Supervisory Defendants maintained, enforced, tolerated, permitted, acquiesced in, and applied the following policies, practices, or customs . . . condoning and tacitly encouraged the publication of false and defamatory statements to numbers sources who they knew would regurgitate such information in publicly available news articles." (D.E. 1 ¶ 227 (f)). Plaintiff asserts further that the Supervisory Defendants "knew, or reasonably should have known, and had actual and constructive knowledge, that their troopers and

other employees, including but not limited to the Individually Named Defendants, would make false and defamatory statements that were going to be published throughout the state that damaged Plaintiff's reputation and stigmatized her name, thus violating her Federal and State Constitutional rights." (D.E. 1 ¶ 230). Plaintiff also specifically asserts that the failures of the Supervisory Defendants to adequately train, supervise, and implement and enforce appropriate policies and customs constituted a violation of Plaintiff's constitutional rights, and were the proximate cause of Plaintiff's injuries and losses. (D.E. 1 ¶¶ 226, 228).

These allegations, *which again Defendants do not address at all in their Memorandum*, sufficiently state all three of Plaintiff's constitutional claims against Defendants Johnson, Smith, and Daniels. Plaintiff's Complaint includes specific factual allegations to support these claims based upon personal involvement and supervisory liability as to all three claims (Sixth, Seventh, and Eighth Claims for Relief). Defendants' motion to dismiss these claims should therefore be denied.

> **d)** **Plaintiff's intentional infliction of emotional distress ("IIED") claim against Defendants Johnson, Daniels, and Smith:**

Defendants' motion to dismiss Plaintiff's IIED claim should also be denied. The elements of a claim for intentional infliction of emotional distress ("IIED") are: "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." Dickens v. Puryear, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981).

In their Memorandum, Defendants do not contend, or present any arguments, that Plaintiff's Complaint fails to sufficiently assert the first and third elements of this claim. Defendants argue, instead, that Plaintiff failed to plead the second element—that Defendants

"intended" to cause extreme emotional distress to Plaintiff.[6]

Defendants' two paragraph argument as to this claim is unfounded. *Defendants acknowledge* in their Memorandum that Plaintiff did, in fact, include an allegation in the Complaint that Defendants intended to cause Plaintiff's severe emotional distress. (D.E. 14 p. 9). Defendants are right. Plaintiff states as follows in Paragraph 250 of the Complaint: "Defendants' actions were beyond the bounds usually tolerated by a decent society and were intended to cause severe emotional and mental distress to Plaintiff." (D.E. 1 ¶ 250, D.E. 14 p. 9).

In addition to the allegation above, Plaintiff asserts further that "Defendants exhibited a reckless indifference to the health and wellbeing of Plaintiff and to the likelihood that their conduct would cause severe emotional and mental distress to Plaintiff." (D.E. 1 ¶ 251). This allegation is also sufficient in North Carolina to state the element of intent for IIED claims. In Russ v. Great American Ins. Companies, 121 N.C. App. 185, 464 S.E.2d 723 (1995), the court states:

> The second element may also be proven by a showing that the defendant acted with reckless indifference to the likelihood that his or her acts will cause severe emotional distress. In describing the recklessness standard for showing intent, our Supreme Court stated that a defendant is liable if he acts recklessly . . . in deliberate disregard of a high degree of probability that emotional distress will follow.

Id. at 189, 464 S.E.2d at 726 (internal quotations and citations omitted).

Defendants do not explain, nor could they, how these directly on point allegations are not sufficient to state the element of intent for an IIED claim. Defendants cite no cases in their Memorandum supporting their argument that these allegations are insufficient. Plaintiff has sufficiently asserted an IIED claim and Defendants' motion to dismiss this claim should be denied.

## III.    Plaintiff's Complaint states sufficient official capacity claims against Defendants

---

[6] Here, again, by failing to include additional arguments in their Memorandum as to this claim, Defendants have waived and are precluded from making them at this time. Brown v. Nucor, Corp., 785 F.3d 895, 932 (4th Cir. 2015).

**Duff, Rich, and Daughtry ("Trooper Defendants"); Defendants' motion to dismiss should therefore be denied.**

In Section III of their Memorandum, Defendants request that Plaintiff's official capacity intentional state tort claims against Defendants Duff, Rich, and Daughtry be dismissed based upon sovereign immunity. For the reasons set forth in Section I(a) and II(b) above, Plaintiff requests that this motion be denied. As stated in Sections I(a) and II(b), Plaintiff has sufficiently asserted waiver of immunity by all Defendants, including through the purchase of insurance. (D.E. 1 ¶¶ 18-19). Additionally, Defendants have taken contradictory positions (here and in North Carolina's Industrial Commission) regarding sovereign immunity and subject matter jurisdiction. Under these circumstances, a determination regarding sovereign immunity cannot be made as a matter of law at this time. Defendants' motion should therefore be denied.

<u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that Defendants' motion to dismiss be denied.

This the 9th day of July, 2025.

**DEMENT ASKEW JOHNSON & MARSHALL, LLP**

By: /s/ James T. Johnson
James T. Johnson
N.C. State Bar No: 19087
E-mail: jjohnson@dementaskew.com
Jonathan W. Martin
N.C. State Bar No: 49381
E-mail: jmartin@dementaskew.com
Juliana Sawyer
N.C. Bar No: 62691
E-mail: jsawyer@dementaskew.com
Post Office Box 711
Raleigh, North Carolina 27602
Telephone: 919-833-5555
*Attorneys for Plaintiff*

25

## CERTIFICATE OF WORD COUNT

In accordance with Local Rule 7.2(f)(3), I hereby certify that this brief does not exceed 8,400 words as reported by the word processing software utilized, excluding the case caption, signature blocks, and certificates of word count and service.

This the 9th day of July, 2025.

**DEMENT ASKEW JOHNSON & MARSHALL, LLP**

By: /s/ James T. Johnson
James T. Johnson
N.C. State Bar No: 19087
E-mail:  jjohnson@dementaskew.com
Jonathan W. Martin
N.C. State Bar No: 49381
E-mail: jmartin@dementaskew.com
Juliana Sawyer
N.C. Bar No: 62691
E-mail: jsawyer@dementaskew.com
Post Office Box 711
Raleigh, North Carolina 27602
Telephone:  919-833-5555
*Attorneys for Plaintiff*

26

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing was served via the Court's CM/ECF filing system which will send notification to all parties or counsels of record.

This the 9th day of July, 2025.

DEMENT ASKEW JOHNSON &
MARSHALL, LLP

By: /s/ James T. Johnson
James T. Johnson
N.C. State Bar No: 19087
E-mail: jjohnson@dementaskew.com
Jonathan W. Martin
N.C. State Bar No: 49381
E-mail: jmartin@dementaskew.com
Juliana Sawyer
N.C. Bar No: 62691
E-mail: jsawyer@dementaskew.com
Post Office Box 711
Raleigh, North Carolina 27602
Telephone: 919-833-5555
*Attorneys for Plaintiff*

27