IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-156-BO-BM

| | |
|---|---|
| RAYLEE JOSEPHINE GRIECO )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORTH CAROLINA STATE HIGHWAY )<br>PATROL, NORTH CAROLINA )<br>DEPARTMENT OF PUBLIC SAFETY, )<br>ASHLEY R. DAUGHTRY, DEVIN M. )<br>RICH, JAMES D. DUFF, TIMOTHY T. )<br>DANIELS, DAVID SMITH, and FREDDY )<br>L. JOHNSON, JR., )<br>)<br>Defendants. ) | O R D E R |

This cause comes before the Court on defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [DE 13]. Plaintiff has responded, defendants have replied, and a hearing on the motion was held before the undersigned on August 14, 2025, at Raleigh, North Carolina. In this posture, the motion is ripe for disposition. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

BACKGROUND

Plaintiff commenced this action in Wake County Superior Court. She alleges claims arising out of an automobile accident on which occurred February 18, 2024. [DE 1-3]. In her complaint, plaintiff alleges claims for libel, slander, malicious prosecution, violation of plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, violation of plaintiff's rights under the North Carolina Constitution, negligence, gross negligence and malicious conduct, and intentional and negligent infliction of emotional distress. Defendants removed the action to this

court on the basis of its federal question jurisdiction and filed the instant motion to dismiss. Defendants seek dismissal of certain claims as barred by sovereign immunity and others for failure to state a claim.

Plaintiff has alleged the following facts in her complaint. [DE 1-3] Compl. The accident that forms the basis of this case occurred while plaintiff was a freshman at the University of North Carolina at Wilmington (UNC-W). Over the February 16, 2024, weekend, plaintiff visited her parents at their home in Raleigh. After dinner on Sunday evening, plaintiff left her parents' home to return to Wilmington. Compl. ¶¶ 24-26. At approximately 8:15 p.m., plaintiff was approaching the intersection of I-40 and NC Highway 41, near Wallace, North Carolina, where the speed limit was seventy miles per hour. At that time, plaintiff suddenly came upon a car that was completely stopped in the roadway, directly in front of her. Plaintiff attempted to swerve but was unable to avoid a collision. *Id.* ¶¶ 27-30.

The stopped car belonged to Mildo Velasquez. The car was stopped behind a pickup truck with a trailer attached, which were also stopped and which also belonged to Mr. Velasquez. It was later discovered that the trailer had become unhitched from the pickup truck, and the car had been positioned behind the trailer in the roadway while Mr. Velasquez attempted to reconnect the trailer. When plaintiff's car clipped the back of the Velasquez family's car, Valesquez's car collided with the trailer, and Mr. Velasquez was killed. *Id.* ¶¶ 28-31. When plaintiff's car collided with the Velasquez's car, plaintiff's front and side airbags deployed. Plaintiff was bleeding from her nose, had facial, chest, leg, and shoulder pain, and had abrasions and bruises on her knee. *Id.* ¶ 32.

Defendant Trooper James Duff was assigned to investigate the accident on behalf of the North Carolina State Highway Patrol. Trooper Duff responded to the scene and conducted a portable breath test on plaintiff to measure her blood alcohol level, which was reported at 0.00.

2

Plaintiff was then transported by emergency responders to ECU Health Duplin County Hospital in Kenansville, North Carolina. While at the hospital, plaintiff was examined by Lee Anne Sorto, a nurse practitioner. Sorto recorded plaintiff's injuries and ordered additional testing. Plaintiff was found to be alert, with soft but clear speech, no pressured speech, and good eye contact. Sorto examined plaintiff for signs of impairment and found none, and thus did not order a blood test to test for impairing substances. Plaintiff was found to have contusions, displaced nasal bone fracture, ear pain, and an abrasion on her left lower leg. *Id.* ¶¶ 33-39. Because plaintiff was visibly shaken and had several injuries, Sorto administered NORCO to plaintiff, a narcotic pain medication that contains hydrocodone. Common side effects of hydrocodone include sleepiness, dizziness, and memory, attention, cognitive, and executive function impairment. Sorto noticed that plaintiff appeared loose and loopy after the NORCO had been administered. *Id.* ¶¶ 40-41. Plaintiff is approximately five feet, two inches tall and weighed about 100 pounds at the time of the accident. *Id.* ¶ 32.

When defendant Trooper Duff arrived at the hospital, his intention was to charge plaintiff with failure to reduce speed until a member of the hospital staff, who was not treating plaintiff, mentioned that plaintiff was acting strangely. Without speaking to plaintiff's attending provider or any other member of her treatment team, defendant Duff requested that a North Carolina State Highway Patrol drug recognition expert (DRE) be assigned to the case. Defendant Trooper Devin Rich was assigned as the DRE. *Id.* ¶¶ 42-45.

Around 11:00 p.m., plaintiff was released from the hospital. Defendant Rich had arrived at the hospital and asked if he could perform some tests on plaintiff. Rich was aware that plaintiff had been administered NORCO but told plaintiff's mother that the pain medication would not impact his testing. Rich was also informed by plaintiff and her mother that plaintiff had been told

3

that she might have a concussion. Rich stated that plaintiff's CT scan did not show evidence of a concussion and therefore plaintiff did not have a concussion. Plaintiff had been told by Sorto that the CT results were inconclusive and that she would need to follow-up with her physician the following day. Rich performed various tests on plaintiff, including walking a straight line, touching her nose with her eyes closed, and following a pen or pencil with her eyes. Rich noted that he observed nystagmus, or involuntary eye movements, during his examination. Based on his testing, Rich told plaintiff that she had been impaired at the time of the accident. Rich made this determination despite the fact that four hours had passed since the accident, plaintiff had been administered narcotic pain medication at the hospital, plaintiff had injuries which caused her to limp, plaintiff had a concussion, which was confirmed the next day, and that that the presence of nystagmus is not indicative of marijuana impairment. *Id.* ¶¶ 49-54. Rich also took a blood sample from plaintiff, but the results were not known for several months. *Id.* 55.

After Rich concluded his examination, Sorto told plaintiff and her parents that she knew that plaintiff had not been impaired when she arrived at the hospital and that she was troubled by what the Troopers had done. After plaintiff was permitted to leave the hospital, she returned with her parents to Raleigh. Her primary care physician diagnosed her with a concussion the next day. *Id.* ¶¶ 62-64.

Defendant Trooper Ashley Daughtry, a trained State Highway Patrol Trooper, was the public information officer involved in plaintiff's case. On February 19, 2024, in response to requests for information from news outlets, Daughtry communicated with Duff about the accident. Duff told Daughtry that plaintiff had been high on marijuana at the time of the accident and there was probable cause to arrest her for driving while impaired and underage driving while impaired. Daughtry then issued a press release which, stated, among other things, that plaintiff was suspected

of being impaired by marijuana at the time of the accident and that a DRE evaluation had been performed which confirmed the presence of THC. *Id.* ¶¶ 65-70. The press release further stated that the State Highway Patrol would be consulting with the District Attorney's Office about whether it wished to consider a felony death charge given the circumstances, specifically that plaintiff had failed to reduce speed and engaged in a DWI, while the victim's vehicles were improperly parked in the highway. *Id.* ¶ 75.

The accident was covered widely in the press, with many articles and broadcasts including the false statement that plaintiff was under the influence of marijuana when the accident occurred. The accident was also included as a part of wider coverage regarding the dangers of driving while impaired by marijuana, with articles, blog posts, and websites directly or indirectly asserting that plaintiff was impaired by marijuana at the time of the accident. *Id.* ¶¶ 81-100. Plaintiff was accused of being a murderer and otherwise the subject of targeted and hateful messages on social media. *Id.* ¶¶ 107-125. On February 20, 2024, plaintiff was suspended from school and her activities on the varsity track team. After a hearing, plaintiff's suspension was lifted on June 13, 2024. *Id.* ¶¶ 101-106. In late July 2024, plaintiff's blood test showed the absence of any impairing substances on the evening of February 18, 2024. The DWI charges were summarily dismissed, and plaintiff pleaded responsible to the infraction of failure to reduce speed on October 2, 2024. *Id.* ¶ 126.

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without

5

converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)). The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### I. Sovereign immunity

The North Carolina State Highway Patrol (NCSHP), the North Carolina Department of Public Safety (NCDPS), and the individual defendants in their official capacities seek to dismiss the state intentional tort claims, claims one through five and twelve, for lack of subject matter jurisdiction based on sovereign immunity.

"[A] state may not be sued in its own courts or elsewhere unless it has consented by statute to be sued or has otherwise waived its immunity from suit." *Battle Ridge Companies v. N. Carolina Dep't of Transp.*, 161 N.C. App. 156, 157 (2003). NCSHP and NCDPS are state agencies, and thus, absent consent or waiver, they are immune from suit. *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997). The claims against the individual defendants in their official capacities are another way of pleading a claim against the State. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citation omitted).

The "State of North Carolina has not waived its sovereign immunity regarding any tort claims other than claims of negligence brought before the Industrial Commission under Article 31 of Chapter 143 of the Tort Claims Act." *Hooper v. North Carolina*, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005). Plaintiff argues only that the purchase of insurance may amount to a waiver of immunity for her intentional tort claims, but her argument is without merit. *See id.*; N.C. Gen. Stat. § 58-32-15(c); *Wood v. N. Carolina State Univ.*, 147 N.C. App. 336, 346 (2001). Accordingly, sovereign immunity bars plaintiff's claims for libel, slander, malicious prosecution, and intentional infliction of emotional distress against NCSHP, NCDPS, and the individual defendants in their official capacities. These claims are dismissed for lack of subject matter jurisdiction in accordance with the foregoing.

## II. State constitution claims

NCSHP and NCDPS have also moved to dismiss the claim for violation of the North Carolina Constitution alleged against them. It is well established that a plaintiff may not maintain a claim under the North Carolina Constitution when adequate remedies at state law exist. *Corum v. Univ. of N.C.*, 330 N.C. 761, 781-82 (1992). To plausibly allege a violation of North Carolina's

Constitution, the plaintiff must allege (1) the violation of her constitutional rights by a state actor, (2) her claim must be colorable, and (3) she must have no adequate remedy under state law. *Deminski on behalf of C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 413 (2021). The "term 'adequate' . . . is not used to mean 'potentially successful.'" *Craig ex rel. Craig v. New Hanover Bd. of Educ.*, 185 N.C. App. 651, 656 (2007), *rev'd on other grounds sub nom. Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334 (2009). Rather, it means "'available, existing, applicable remedy.'" *Id.* (citation omitted). "[A] claim that is barred by sovereign or governmental immunity is not an adequate remedy." *Deminski*, 377 N.C. 406 at 413.

Plaintiff has alleged violations of Article I, sections 18, 19, and 23 of the North Carolina Constitution only against NCSHP and NCDPS. Plaintiff has not alleged that she lacks an adequate remedy under state law, nor do her threadbare allegations plausibly allege a colorable constitutional claim. *See Howell v. Cooper*, 290 N.C. App. 287, 297 (2023); [DE 1-3] ¶¶ 234-237. Plaintiff's claim under the North Carolina Constitution is properly dismissed. The Court declines to permit plaintiff an opportunity to amend her complaint in order to specifically allege that she lacks an adequate remedy under state law, as to do so would be futile in light of her failure to plausibly allege a colorable claim and as, is discussed more fully below, at least some of her state law claims will survive this motion to dismiss, leaving plaintiff with an adequate remedy. Plaintiff's claim nine is dismissed in its entirety.

### III. Claims against the supervisory defendants in their individual capacities

A. Intentional infliction of emotional distress

The Supervisory Defendants, defendants Timothy Daniels, David Smith, and Freddy Johnson, move to dismiss plaintiff's claim for intentional infliction of emotional distress alleged against them in their individual capacities under Rule 12(b)(6). [DE 14] at 8-9.

8

Case 5:25-cv-00156-BO-BM    Document 28    Filed 10/07/25    Page 8 of 11

To prevail on a claim for intentional infliction of emotional distress (IIED), a plaintiff must show "(1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress to another." *May v. City of Durham*, 136 N.C. App. 578, 586 (2000).

The Court has considered plaintiff's IIED claim in light of the applicable standard and determines that plaintiff has plausibly alleged this claim against the Supervisory Defendants in their individual capacities. As plaintiff has nudged this claim across the line from conceivable to plausible, the motion to dismiss as to this claim is denied.

B. Section 1983 claims

Plaintiff has alleged three claims under 42 U.S.C. § 1983. Plaintiff alleges claims against each of the individual defendants in their individual capacities for violating plaintiff's Fourth and Fourteenth Amendment rights arising out of malicious prosecution (claim six) and as a result of injury to reputation and stigma-plus (claim seven). Plaintiff also alleges a claim against the Supervisory Defendants in their individual and official capacities for violating her Fourth Amendment rights (claim eight).

The Supervisory Defendants seek to dismiss some of plaintiff's § 1983 claims against them. They argue that claims six and seven should be dismissed because § 1983 does not permit liability under a respondeat superior theory and that claim eight should be dismissed as against the Supervisory Defendants in their official capacities as barred by sovereign immunity. [DE 14] at 6; 8.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). "The essential elements of any [§] 1983 action are proof of conduct 'committed by a person acting under color

9

of state law' that 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Avery v. Burke Cnty.*, 660 F.2d 111, 115 (4th Cir. 1981) (citation omitted). Additionally, the "doctrine of *respondeat superior* has no application under this section." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (citation omitted). Rather, a plaintiff must affirmatively show that "the official charged acted personally in the deprivation of the plaintiff's rights." *Id.*

First, plaintiff agrees to dismissal of her § 1983 official capacity claim against the Supervisory Defendants in claim eight. *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989). Claim eight is thus dismissed in part.

Plaintiff does not concede that any of her § 1983 claims against the Supervisor Defendants in their individual capacities should be dismissed. The Court has considered plaintiff's § 1983 claims in light of the applicable standard and determines that these claims should not be dismissed against the Supervisory Defendants in their individual capacities at this time. The motion to dismiss as to these claims is denied.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss [DE 13] is GRANTED IN PART and DENIED IN PART. Plaintiff's claims against the NCSHP and NCDPS for libel, slander, malicious prosecution, intentional infliction of emotional distress, and under the North Carolina Constitution are dismissed. Plaintiff's claims for libel, slander, malicious prosecution, and intentional infliction of emotional distress against the individual defendants in their official capacities are also dismissed. Plaintiff's § 1983 claim in claim eight against the Supervisory Defendants in their official capacity is dismissed. Plaintiff's remaining claims may proceed.

10

SO ORDERED, this __7__ day of October 2025.

                                                                             */s/ Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE